**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CRYSTALLEX INTERNATIONAL
CORPORATION,

      Plaintiff,

v.                                        CASE NO: 1:17-cm-0205-VEC

BOLIVARIAN REPUBLIC OF VENEZUELA,

      Defendant,

and

THE MINISTRY OF DEFENSE OF THE
BOLIVARIAN REPUBLIC OF VENEZUELA

      Intervenor.

_____/

**MOTION TO INTERVENE AND QUASH WRIT OF EXECUTION**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND .......................................................................2

ARGUMENT AND MEMORANDUM OF LAW .........................................................................5

   I.   The Ministry has met all of the criteria to intervene in this action ...............................5

   II.  Crystallex failed to satisfy the requirements of CPLR 5230 because the Republic lacks an interest in the property sought in the Writ ...............................................................6

   III. Crystallex has failed to establish a right to execution under FSIA § 1610, and the assets it seeks to obtain are immune from execution under § 1611 ..............................8

       A.  The Trust proceeds are not property used for commercial activity in the United States ...................................................................................................................10

          1.  *Crystallex cannot plead any of the statutory grounds to show the Trust assets are not immune from attachment under the commercial activity exception of the FSIA* ...................................................................................................10

          2.  *Crystallex's half-hearted attempt to overcome the presumption of independent status between the Ministry and the Republic must fail* ........................................11

          3.  *The Injunction further bars any attempt to claim that the Ministry can "use" the Trust proceeds* ........................................................................................13

          4.  *In any event, the Trust assets are of a military character, making them immune* .14

   IV. Crystallex impermissibly sought the Writ for the sole purpose of circumventing an Injunction issued by a federal court that has already exercised jurisdiction over the matter ...........................................................................................................16

   V.  Given that the subject assets were frozen, and considering the extremely public nature of the Ingalls litigation, it was improper and unnecessary for Crystallex to seek a writ through *ex parte* proceedings under seal .............................................17

   VI. The form of the writ is defective because it fails to satisfy the FSIA and seeks assets that are not subject to Crystallex's judgment against the Republic .........................19

CONCLUSION ..................................................................................................................21

<u>**TABLE OF AUTHORITY**</u>

**Cases**

*All Am. Trading Corp. v. Cuartel Gen. Fuerza Aerea Guardia Nacional De Nicaragua*, 818 F. Supp. 1552 (S.D. Fla. 1993). ........................................................................... 14,  15

*Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989). ....................... 8

*Aurelius Capital Partners, LP v. Republic of Argentina*, 584 F.3d 120, 131 (2d Cir. 2009) ....... 10

*Autotech Tech. LP v. Integral Research & Dev. Corp.*, 49 F.3d 737, 750 (7th Cir. 2007) .......... 21

*Baglab Ltd. v. Johnson Matthey Bankers Ltd.*, 665 F. Supp. 289, 293-94 (S.D.N.Y. 1987).......... 9

*Bayer & Willis Inc. v. Republic of Gambia*, 283 F. Supp. 2d 1, 7 (D.D.C. 2003)................... 1, 20

*Butler, Fitzgerald & Potter v. Sequa Corp.,* 250 F.3d 171, 176 (2d Cir. 2001) ........................... 5

*See In re Carpenter*, 566 B.R. 340, 349 (S.D.N.Y. 2017) ........................................................... 10

*Colella v. Republic of Argentina*, No. C 07-80084 WHA, 2007 WL 1545204, at *8 (N.D. Cal. May 29, 2007) ............................................................................................................................ 15

*De Letelier v. Republic of Chile*, 748 F.2d 790, 794 (2d Cir. 1984).................................... *passim*

*EM Ltd. v. Banco Central de la República Argentina*, 800 F.3d 78, 99 (2d Cir. 2015) ........ *passim*

*EM Ltd. v. The Republic of Argentina*, 2010 WL 2399560, at *4 (S.D.N.Y. June 11, 2010) .. 1, 13

*Embry v. Palmer*, 107 U.S. 3, 10, 2 S. Ct. 25, 31, 27 L. Ed. 346 (1883)...................................... 16

*Employers Reinsurance Corp. v. Mid-Continent Cas. Co.*, 358 F.3d 757, 765 (10th Cir. 2004). 16

*First Nat. City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 611, 103 S. Ct. 2591, 2592 (1983) ............................................................................................................... 11, 20

*Garb v. Rep. of Poland*, 440 F.3d 579, 588 (2d. Cir. 2006) ........................................................ 12

*See Gomes v. ANGOP, Angola Press Agency*, 2012 WL 3637453, at *11 (E.D.N.Y. Aug. 22, 2012), *aff'd sub nom. Gomes v. ANGOP*, 541 F. App'x 141 (2d Cir. 2013) ............................ 12

*GSS Grp. Ltd. v. Nat'l Port Authority of Liberia*, 680 F.3d 598, 814 (D.C. Cir. 2016) .............. 12

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, No. CIV.A. H-01-0634, 2002 WL 32107928, at *1 (S.D. Tex. Mar. 7, 2002)................................................. 20

*Ladjevardian v. The Republic of Argentina*, No. 04-CV-2710 (TPG), 2016 WL 3039189, at *2 (S.D.N.Y. May 26, 2016) ..................................................................................................... *passim*

*NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246, 262 (2d Cir. 2012)..................... 9, 16

*Olympic Chartering S.A. v. Ministry of Industry & Trade of Jordan,* 134 F. Supp. 2d 528, 536 (S.D.N.Y. 2001) ......................................................................................................................... 21

*Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 112 S. Ct. 2160, 119 L. Ed. 2d 394 (1992) ................................................................................................................................ 15

*Robinson v. Gov't of Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001) (quotation omitted)................ 9

*Seijas v. Republic of Argentina*, 502 F. App'x 19, 21 (2d Cir. 2012) (citing *De Letelier*, 748 F.2d at 795)........................................................................................................................ 11

*Servaas Inc. v. Republic of Iraq*, 653 F. App'x 22, 25 (2d Cir. 2011), *as amended* (Feb. 16, 2011) ................................................................................................................................ 12

*Simon v. Republic of Hungary*, 812 F.3d 127, 135 (D.C. Cir. 2016)............................................. 9

*Twentieth Century-Fox Film Corp. v. Jenkins*, 7 F.R.D. 197, 199 (S.D.N.Y. 1947) .................... 5

*United Euram Corp. v. Union of Soviet Socialist Republics*, 461 F. Supp. 609, 611 (S.D.N.Y. 1978)................................................................................................................................ 15

*Wye Oak Tech., Inc. v. Republic of Iraq*, 72 F. Supp. 3d 356, 360 (D.D.C. 2014)....................... 12

**Statutes and Constitution**

U.S. Const. art. IV, § 1................................................................................................................ 16

28 U.S.C. § 1610............................................................................................................... *passim*

28 U.S.C. § 1611............................................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 24 .......................................................................................................................... 5

CPLR 5225..................................................................................................................................... 6

CPLR 5230..................................................................................................................................... 6

## MOTION TO INTERVENE AND QUASH WRIT OF EXECUTION

Intervenor, the Ministry of Defense of the Bolivarian Republic of Venezuela (the "Ministry"), hereby files this Motion to Intervene and Quash the Writ of Execution issued by this Court on July 26, 2017 (the "Writ") in favor of Plaintiff, Crystallex International Corporation ("Crystallex"), and in support states:

### INTRODUCTION

Twenty-four years after the creation of the Trust Agreement, and fifteen years after the Southern District of Mississippi ruled that the Trust Agreement holds funds in trust, Crystallex would have this Court decide that the Trust is not a trust. Crystallex would also have this Court believe many things the documents do not say, each of which is a grounds for quashing the Writ:

- The Ministry's obligation to pay is not an interest subject to attachment. *See Ladjevardian v. The Republic of Argentina*, No. 04-CV-2710 (TPG), 2016 WL 3039189, at *2 (S.D.N.Y. May 26, 2016).

- Because the Trust exists, the Ministry has no title in the funds and cannot "use" them sufficient to make them immune from execution. *See id.*

- Crystallex has a judgment against the Bolivarian Republic of Venezuela (the "Republic"), not the Ministry, and Crystallex has provided no grounds to undo the separation between the two. *See EM Ltd. v. Banco Central de la República Argentina*, 800 F.3d 78, 99 (2d Cir. 2015).

- The Ministry cannot "use" funds that are frozen by an injunction. *EM Ltd. v. The Republic of Argentina*, 2010 WL 2399560, at *4 (S.D.N.Y. June 11, 2010).

- As the Trust says, the purpose of the funds is a "military activity," meaning the funds are immune. *See* 28 U.S.C. § 1611.

- There is already an injunction over these funds in Mississippi. *See* Ex. A.

- The judgment does not include Ministry. The Writ cannot either. *Bayer & Willis Inc. v. Republic of Gambia*, 283 F. Supp. 2d 1, 7 (D.D.C. 2003).[1]

_____

[1] For the avoidance of doubt, the Ministry is only intervening to protect whatever rights and obligations under the Trust. This is not a waiver of service, immunity from jurisdiction or attachment, or a waiver of any other right.

<u>FACTUAL AND PROCEDURAL BACKGROUND</u>

***The Underlying Contract with Ingalls and the Trust with BNYM***

1.      In 1997, the Ministry of Finance of the Republic of Venezuela (now the "Bolivarian Republic of Venezuela," and in all cases the "Republic"), issued "global notes" in the amount of 315,000,000 USD. The proceeds of the issuance were placed in an account with Bank of New York Mellon ("BNYM"). From their issuance, the proceeds had a specific purpose. To receive the bond proceeds, the Republic created a trust with BNYM as trustee (the "Trust"). This arrangement was memorialized in an agreement (the "Trust Agreement"), a copy of which is attached as Exhibit A. The only parties to the Trust Agreement are the Republic and BNYM.

2.      The Trust Agreements states it has been funded with 315,000,000 USD for the purpose of paying for the Republic's obligations in a potential contract (the "Contract") with Litton Ingalls Shipbuilding, Inc. (now "Huntington Ingalls" and referenced herein as "Ingalls"). The Trust Agreement contains a number of defining characteristics.

3.      The Trust Agreement is not classified as "Secret," but the Contract is. The Trust Agreement lists members of the Venezuelan Armed Forces as authorized agents of the trust created by the Trust Agreement, and only a member of the Venezuelan Armed Forces or Ministry of Defense can authorize payments from the trust for items related to the Contract.

4.      Both Ingalls and the Ministry of Defense executed the Contract, and the Contract contains a cover page that representatives of both undoubtedly read. The cover page states that the Contract is "Secret" and that any disclosure of the Contract is subject to compliance with security protocols within the Venezuelan Armed Forces. *See* Contract Cover Page, a true and correct copy with its translation attached as Exhibit B.

5.      Although counsel does not have the authority to release the terms of the Contract, suffice to say that there is little doubt that the Contract was for the purpose of repair of two war frigates and their related elements, such as helicopters, anti-aircraft missiles, and similar items.

***The Underlying Dispute Between Ingalls and the Ministry***

6.      In 2002, Ingalls decided to sue the Ministry for claims arising under the Contract in a case styled *Northrup Grumman Ship Systems, Inc. v. Ministry of Defense of the Republic of Venezuela*, Case No. 02-CV-00785 (S.D. Miss.) (the "Mississippi Proceedings"). Ingalls filed suit in the Southern District of Mississippi (the "Mississippi Court"), and it requested a preliminary injunction directed at BNYM, not the Ministry. There is no mention of the Republic as a party to the Mississippi Proceedings.

7.      A temporary injunction issued on November 6, 2002, which is attached to this Motion as Exhibit C (the "Injunction"). The Injunction ordered that BNYM "is hereby restrained from transferring, or allowing to be transferred, any funds from the Republic of Venezuela Trust Account No. XXXX14 for any purpose other than to pay Ingalls in accordance with the trust agreement…"

8.      The Ministry was not present at the hearing on the Injunction and BNYM took no position on the merits of the request, other than not to oppose it. The Injunction found that BNYM may suffer limited harm and ordered Ingalls to post a small bond. The Order's directions are to Ingalls and BNYM. The Order consistently refers to the underlying asset as funds in a "trust account."

9.      The parties were ordered to arbitration in December 2010, and an award is expected no later than December 5, 2017.  In the meantime, the Injunction remains in full force and effect. The Ministry does not believe the Injunction is warranted, a position it has asserted in the arbitration. Crystallex has not intervened in the Mississippi Proceedings.

*The Underlying Dispute with Crystallex*

10.     Based on a completely separate dispute unrelated to Ingalls, Crystallex International Corporation ("Crystallex" or "Petitioner") initiated arbitration proceedings against Venezuela in 2011. An arbitral tribunal issued an award against Venezuela in 2016, which the District Court for the District of Columbia (the "D.C. Court") confirmed on March 25, 2017, in a case styled *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, Case No. 16-CV-661, DE 31 (D.D.C.).

11.     Thereafter, Crystallex moved the D.C. Court for an order "pursuant to 28 U.S.C. § 1610(c), determining that a reasonable period of time has elapsed since this Court's March 25, 2017 Order" and "permitting, for good cause, Crystallex to register the Court's Judgment in other judicial districts of the United States ... pursuant to 28 U.S.C. § 1963." (Case No. 16-CV-661, DE 36, p. 1).

12.     Notably, the Court declined to adjudicate whether certain assets would ultimately be attachable by Crystallex. As the DC Court noted, "[the] Court's determination that good cause exists to register the judgment has no bearing on whether any assets will ultimately be 'leviable' to satisfy [a] judgment." (Case No. 16-CV-661, DE 39, p. 4). Judgement was entered against Venezuela on April 7, 2017. (Case No. 16-CV-661, DE 33).

13.     This Court registered the Judgment on June 15, 2017 in a case styled *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, Case No. 17-mc-205, DE 1 (S.D.N.Y.). Thereafter, Crystallex filed the instant *ex parte* application to attach the funds currently held by BNYM pursuant to the Trust Agreement. Despite the Injunction, which forbids BNYM from transferring funds out of the trust account for any purpose other than to pay Ingalls, Crystallex

urged this Court to keep its application under seal out of an ostensible fear that Venezuela would remove the funds from the trust. (Case No. 17-MC-205, DE 12-2.)

14.    Crystallex's *ex parte* application was granted on July 25, 2017, and the Writ was issued the next day. (Case No. 17-MC-205, DE 12-4.)

15.    Crystallex then filed a turnover petition against BNYM in this Court directing BNYM to turn over the funds held in trust in partial satisfaction of its Judgment against the Republic. The Republic is challenging the turnover petition contemporaneously with this Motion.

16.    For the reasons explained below, the Writ is due to be quashed.

## ARGUMENT AND MEMORANDUM OF LAW

## I.    The Ministry has met all of the criteria to intervene in this action

Federal Rule Civil Procedure 24 governs intervention in a federal action. Rule 24(a) expressly provides:

> On timely motion, the court must permit anyone to intervene who...claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Under Rule 24, a putative intervenor of right must establish four criteria: "the applicant must (1) file a timely motion; (2) claim an interest relating to the property or transaction that is the subject of the action; (3) be so situated that without intervention the disposition of the action may impair that interest; and (4) show that the interest is not already adequately represented by existing parties." *Butler, Fitzgerald & Potter v. Sequa Corp.,* 250 F.3d 171, 176 (2d Cir. 2001). "Rule 24(a) should be liberally interpreted." *Twentieth Century-Fox Film Corp. v. Jenkins*, 7 F.R.D. 197, 199 (S.D.N.Y. 1947) (citations omitted).

The Motion satisfies all four criteria. This motion is timely, coming early in the case before any other party has filed a response. The Ministry also has a strong interest in the transaction at issue. If the Writ stands and the Trust is invaded, the Ministry will not have the funds to pay any amounts due under the Contract, should such a scenario arise. Although the interest identified for the purposes of intervention is apparent, it is not the kind of interest that is subject to execution or attachment, as discussed below. Finally, the Ministry's interest in this action cannot be adequately represented by Respondent. As a sovereign entity and authorized agent to issue instructions under the Trust, the Ministry can raise arguments unavailable to Respondent, and possesses information that Respondent does not. Having met all four elements, this Court should grant the Ministry's motion to intervene.

In addition, Crystallex can hardly oppose the Ministry's request to intervene. The Ministry is not the judgment debtor—the judgment issued by the D.C. Court clearly does not name the Ministry. But Crystallex has apparently asserted that the Ministry is the judgment debtor through the text of the Writ. If Crystallex wants to argue that the Ministry is the judgment debtor, then it certainly has no grounds to oppose the Ministry's motion to intervene.

## II. Crystallex failed to satisfy the requirements of CPLR 5230 because the Republic lacks an interest in the property sought in the Writ

The Writ should be quashed because the Ministry does not have an "interest" in the property that can be attached, as CPLR 5230 interprets that term. According to the Trust Agreement, the Trust assets are to be used to satisfy the Ministry's contractual obligation to Ingalls, with a contingent residual interest to the Ministry of Finance, which is a separate entity from the Republic. The Ministry possesses only an obligation to pay Ingalls under the Trust Agreement, and Crystallex cannot properly list any interest the Ministry may have as part of the Writ. This Court should therefore quash the writ as it relates to the Ministry.

Listing the Ministry of Finance on the Writ does not create an interest in the Republic that Crystallex can attach. While there is not an extensive amount of jurisprudence related to the attachment of sovereign assets according to CPLR, the Court can look to CPLR 5225 as an interpretive aid. The companion statute of CPLR 5225 contains one of the same requirements present in CPLR 5230, *i.e.*, that the judgment debtor have an "interest" in the property upon which the judgment creditor seeks execution. In the strikingly similar case of *Ladjevardian v. The Republic of Argentina*, No. 04-CV-2710 (TPG), 2016 WL 3039189, at *2 (S.D.N.Y. May 26, 2016), *aff'd sub nom. Mohammad Ladjevardian, Laina Corp. v. Republic of Argentina*, 663 F. App'x 77 (2d Cir. 2016), this Court found that the judgment debtor lacked an interest in the corpus of a trust used to satisfy its contractual obligations. In *Ladjevardian*, the government of Argentina defaulted on a sizeable bond issue, and reached a settlement agreement with its bondholders. This settlement was to be funded by a separate series of bonds, the proceeds of which were committed to a trust with (coincidentally) BNYM. A bulk of the trust assets were to be used to satisfy Argentina's obligations under its settlement agreement, while any remainder was to be remitted to the Central Bank of Argentina. A group of holdout bondholders had declined to settle, and pursued Argentina through a turnover action aimed at seizing the corpus of the trust. This Court denied their turnover petition, finding that neither part of the applicable analysis was satisfied.

The Court found that Argentina did not have any interest in the trust assets. Because the entirety of the assets went either toward Argentina's settlement obligations or to the Central Bank, none of it remained for the Republic itself. *See id.* at *3. Accordingly, the first part of the analysis was not satisfied. The petitioners argued that Argentina was trying to deceive its creditors by naming the Central Bank as a potential beneficiary, and that the residue of the trust

would ultimately flow back to Argentina through the Central Bank in some form of benefit. The Court rejected this argument, citing the Second Circuit's decision in *EM Ltd. v. Banco Central de la República Argentina*, 800 F.3d 78, 99 (2d Cir. 2015), which held that a state was a presumptively separate entity from its instrumentalities, absent a strong showing of fraud or injustice.

The same analysis here yields the same result. The property at issue is a sum of funds held in trust with BNYM for the purpose of satisfying the Ministry's contractual obligations, with a contingent residual interest to the Ministry of Finance—an instrumentality of the Republic. Crystallex is a general unsecured creditor with a money judgment, while BNYM holds title to the Trust funds as trustee. By the very terms of the trust, its proceeds are to be paid to Ingalls (to the extent applicable under the Contract) while any surplus is to be remitted to the Ministry of Finance—a separate legal entity from the Republic. The Trust Agreement contains no provisions giving the Republic discretion to revoke the trust or redirect any payment. For the same reasons elaborated in *Ladjevardian*, the Republic has no interest in the Trust assets, it has no right to possess the Trust assets, and Crystallex lacks superior legal interest to BNYM in the Trust Assets. Without an interest in the property, a core requirement of CPLR 5230 is unsatisfied, and the Writ should consequently be quashed.

**III.    Crystallex has failed to establish a right to execution under FSIA § 1610, and the assets it seeks to obtain are immune from execution under § 1611**

The assets Crystallex is seeking to wrest from BNYM are immune from attachment by the unequivocal provisions of the Foreign Sovereign Immunities Act ("FSIA"). The FSIA provides "the sole basis for obtaining jurisdiction over a foreign state in [federal] courts." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434, 109 S. Ct. 683, 688, 102 L. Ed. 2d 818 (1989). The same applies to jurisdiction over agencies and instrumentalities of

a foreign state, such as the Ministry. *See Simon v. Republic of Hungary*, 812 F.3d 127, 135 (D.C. Cir. 2016) ("In the United States, the sole avenue for a court to obtain jurisdiction over claims against a foreign state or its agencies and instrumentalities is through the FSIA."). Under § 1609 of the FSIA, "[s]ubject to existing international agreements...the property in the United States of a foreign state shall be immune from attachment arrest and execution except as provided in sections 1610 and 1611 of this chapter." *See also NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246, 262 (2d Cir. 2012) (holding that courts are barred from granting any relief that they could not provide by attachment under the FSIA). When construing claims pursuant to the FSIA, "the district court must look at the substance of the allegations to determine whether one of the exceptions to the FSIA's general exclusion of jurisdiction over foreign sovereigns applies." *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001) (quotation omitted). When a party makes a showing that it is a foreign state or instrumentality, the opposing party bears the burden of presenting evidence that demonstrates why an exception to immunity should apply. *See Freund*, 592 F Supp. 2d at 552-53 (citing *Baglab Ltd. v. Johnson Matthey Bankers Ltd.*, 665 F. Supp. 289, 293-94 (S.D.N.Y. 1987)).

By invoking the FSIA in its application, it would seem that Crystallex concedes that both the Republic and the Ministry are "foreign states" (or an instrumentality thereof) within the meaning of the FSIA. *See generally* ECF No. 13. Consequently, the property of the Republic and the Ministry are presumptively immune from attachment under the plain language of § 1609. While this presumption of immunity is a rebuttable one, Crystallex does precious little to allege that the assets sought are excepted from that immunity.

A.      The Trust proceeds are not property used for commercial activity in the United States

Crystallex might try to proceed under the commercial activity exception of § 1610(a), which excludes property "used for a commercial activity in the United States." This argument, however, would be entirely unavailing; Crystallex cannot show the Trust Proceeds are to be "used" by the Republic or the Ministry, and Crystallex cannot prove the purpose of the Trust Proceeds is a "commercial activity."

1.      *Crystallex cannot plead any of the statutory grounds to show the Trust assets are not immune from attachment under the commercial activity exception of the FSIA*

As to the first element, the "use" of the property, this Court has previously held that a sovereign's trust assets designated to satisfy a contractual obligation do not constitute property "used for a commercial activity" within the meaning of § 1610(a). *See Ladjevardian*, 2016 WL 3039189, at *5. As this Court found, "property held by a third party solely for the purpose of later transfer to a foreign state is not being 'used' by the state." *Ibid.* (citing *Aurelius Capital Partners, LP v. Republic of Argentina*, 584 F.3d 120, 131 (2d Cir. 2009)). "The Republic does not have the 'opportunity to use' property that is not 'in the hands of the Republic,' and the FSIA therefore precludes execution on any proceeds held by BNYM." *Ibid*.

The prior decisions of this Court in relation to the use of trust assets should apply to this case. The Trust Proceeds are on account with BNYM, and BNYM's trust department is the expressly designated trustee of the funds. The account statement has the words "trust account" prominently displayed at the top right-hand corner. The trust contains all the requirements for a valid trust under New York law. *See In re Carpenter*, 566 B.R. 340, 349 (S.D.N.Y. 2017) ("Under New York law, the requirements of a trust are (1) a designated beneficiary, (2) a designated trustee, who is not the same person as the beneficiary, (3) a clearly identifiable *res*,

and (4) the delivery of the *res* by the settlor to the trustee with the intent of vesting legal title in the trustee.") (quotation omitted). The trustee is not the same as the beneficiary, and it is sufficiently definite in regards to the trust corpus (the proceeds of the note issuance). As such, the Ministry has no ownership of the funds such that it can use them, making those funds immune under the FSIA. Any writ purporting to assert claims to the Trust assets must therefore be quashed.

> 2.     *Crystallex's half-hearted attempt to overcome the presumption of independent status between the Ministry and the Republic must fail*

Further, there is no argument that the right of the Ministry of Defense to act as authorized agent in relation to the Trust Proceeds somehow changes the result. For the purposes of the FSIA, the Republic and the Ministry are separate entities entitled to their own immunities. Under the FSIA, a state's, agencies, and instrumentalities "are to be accorded a presumption of independent status" from the state itself. *First Nat. City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 611, 103 S. Ct. 2591, 2592 (1983). As held repeatedly through this circuit, this is a "strong presumption." *EM Ltd.*, 800 F.3d at 90 (citing *De Letelier v. Republic of Chile*, 748 F.2d 790, 794 (2d Cir. 1984)). Both Supreme Court precedent "and the FSIA legislative history caution against too easily overcoming th[is] presumption of separateness." *De Letelier*, 748 F.2d at 795. This presumption can only be overcome when an instrumentality's separateness "is interposed to defeat legislative policies" or where it would otherwise "work fraud or injustice." *Id.* at 794 (citing *First Nat. City Bank*, 103 S. Ct. at 2601). The plaintiff naturally has the burden of proving that a cause for separation does not exist. *See Seijas v. Republic of Argentina*, 502 F. App'x 19, 21 (2d Cir. 2012) (citing *De Letelier*, 748 F.2d at 795).

Governmental ministries are entitled to the presumption of separateness in the same manner as state-owned corporate entities. *See Wye Oak Tech., Inc. v. Republic of Iraq*, 72 F. Supp. 3d 356, 360 (D.D.C. 2014) ("[T]he Ministry [of Defense] is presumed to be a legally separate entity from Iraq for purposes of determining liability in this case."). The presumption can only be overcome when the plaintiff shows that the instrumentality is "so extensively controlled by its owner that a relationship of principal and agent is created...or when 'broader equitable principle[s]' dictate that separate treatment 'would work fraud or injustice.'" *Id.* (quoting *GSS Grp. Ltd. v. Nat'l Port Authority of Liberia*, 680 F.3d 598, 814 (D.C. Cir. 2016)). "In general, the test for determining when the presumption of separateness will give way is not a mechanical formula; instead, it involves an equitable determination in light of the facts presented by the particular case." *Id.* at 360 (D.D.C. 2014) (quotations omitted).

With precious little support, Crystallex contends that the Court should ignore this presumption of separateness based on the theory that the Ministry's "commercial activities" (which they are not) should be imputed to the Republic not only for liability purposes, but also for purposes of execution. This argument is untenable. Crystallex cites a handful of cases that ostensibly stand for the proposition that the commercial activities of the Republic's ministries may be imputed to the Republic itself. *See Gomes v. ANGOP, Angola Press Agency*, 2012 WL 3637453, at *11 (E.D.N.Y. Aug. 22, 2012), *aff'd sub nom. Gomes v. ANGOP*, 541 F. App'x 141 (2d Cir. 2013); *Servaas Inc. v. Republic of Iraq*, 653 F. App'x 22, 25 (2d Cir. 2011), *as amended* (Feb. 16, 2011); *Garb v. Republic of Poland*, 440 F.3d 579, 595 & n.19 (2d Cir. 2006). None of these cases, however, deal with the execution of a sovereign's assets, or with service of process in such proceedings. Rather, each of these cases concerns the liability of a sovereign in the first instance. Furthermore, it bears noting that in each of these cases the court gave considerable

discussion and analysis on the issue of imputation before reaching their decision. This is in keeping with the "strong presumption" of separateness that the Second Circuit affords foreign states and their agencies and instrumentalities. *EM Ltd.*, 800 F.3d at 90. If this presumption is to be a weighty one, the overcoming it certainly requires more proof than Crystallex's conclusory allegation that the Ministries of Defense and Finance are "primarily governmental" such that imputation is proper.

3.      *The Injunction further bars any attempt to claim that the Ministry can "use" the Trust proceeds*

In addition, Crystallex faces a further issue regarding any "use" of the Trust Proceeds. The Injunction effectively freezes the Trust assets in place, and under similar circumstances, this Court reasoned that such property does not fall within the ambit of § 1610(a). In *EM Ltd. v. The Republic of Argentina*, 2010 WL 2399560, at *4 (S.D.N.Y. June 11, 2010), this court reasoned that frozen funds cannot be used by a sovereign are not "used for a commercial activity:"

> to hold here that frozen assets were "used for a commercial activity" for FSIA purposes would be inconsistent with the Second Circuit's recent holding in Aurelius, 584 F.3d at 130–31. There, bank deposits and securities were frozen by order of this court at the moment they were transferred to government control. The Second Circuit reversed this court's confirmation of the attachment orders, holding that because the assets were frozen at the moment of transfer, "neither the [Argentine Social Security] Administration nor the Republic had the opportunity to use the funds for any commercial activity whatsoever." Id. at 131. Likewise here, because the FRBNY funds have been frozen for the past four years, neither BCRA nor the Republic has had the opportunity to use the funds for commercial activity throughout that time, including at or around the period of the instant attachments in January and early February 2010.

The same result should apply here.

The Trust assets have been frozen, for all intents and purposes. The Injunction expressly commands that BNYM "is hereby restrained from transferring, or allowing to be transferred, any funds from the Republic...for any purpose other than to pay [Ingalls] in accordance with the trust

agreement…" Ex. A, p. 4. As long as the Trust remains subject to the Injunction, neither the Republic nor the Ministry have any opportunity to use the funds, and the funds are immune.

        4.     *In any event, the Trust assets are of a military character, making them immune*

Furthermore, the assets sought by Crystallex are specifically entitled to immunity under § 1611, which provides in relevant part:

> (b) Notwithstanding the provisions of section 1610 of this chapter, the property of a foreign state shall be immune from attachment and from execution, if--
>
> > (2) the property is, or is intended to be, used in connection with a military activity and
> >
> > (A) is of a military character, or
> >
> > (B) is under the control of a military authority or defense agency.

The scope of this section is succinctly laid out in the decision in *All Am. Trading Corp. v. Cuartel Gen. Fuerza Aerea Guardia Nacional De Nicaragua*, 818 F. Supp. 1552 (S.D. Fla. 1993). That case involved a pair of airplanes owned by the Ecuadorian Air Force, which were flown to Florida for repair and maintenance work by the plaintiff. *Id.* at 1553. A dispute ultimately arose regarding payment, and the plaintiff prevailed in the ensuing suit, and attempted to execute on the defendant's airplanes which were still in its custody. *Ibid.* The defendant raised § 1611(b)(2) as a defense, as the planes were used to transport military personnel and operated under military command. *Id.* at 1554-55. The plaintiff argued that § 1611(b)(2) was inapplicable because the planes were, in essence, passenger jets and not combat aircraft. *Id.* at 1555. The court ruled for the defendant, finding that the property in question satisfied both prongs of § 1611(b)(2). The planes were found to have a military character because they were vehicles used to transport military personnel, which comported both with the statute's language and the legislative history. *All Am. Trading Corp.*, 818 F. Supp. at 1555-56. The planes also satisfied the

second prong of § 1611(b)(2) because they were "intended to protect other military property and is essential to military operations." *Id.* at 1555. It did not matter that the assets were currently in custody of the plaintiff, or that they were not themselves combat vehicles. *Id.* at 1555-56. This decision was cited extensively in the Northern District of California's decision that the Argentine president's airplane was immune from execution. *See generally Colella v. Republic of Argentina*, No. C 07-80084 WHA, 2007 WL 1545204, at *8 (N.D. Cal. May 29, 2007).

For the same reasons, the Trust assets are immune from execution under § 1611(b)(2). By the very language of the Trust Agreement, the Trust funds are "used in connection with a military activity," *i.e.*, the purchase of various upgrades and components to warships. *See* Ex. B, pp. 2, 4-5 (ordering payment to Ingalls for its work under the contract). They are, for the same reason, "of a military character." Furthermore, the funds are "under the control of a military authority;" the Trust Agreement contains express language giving the Ministry's personnel the authority to approve certain disbursements. *See id.*, pp. 2, 4-5. It makes no difference that the Trust funds—like the planes in *All Am. Trading Corp.*—might conceivably be used for non-military purposes. The Trust assets have, at all times, been assets intended for the procurement of military hardware aboard military vessels, subject to the command and oversight of military personnel. Accordingly, § 1611(b)(2) applies and the Trust assets are exempt from execution.

The decisions in *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 112 S. Ct. 2160, 119 L. Ed. 2d 394 (1992) and *United Euram Corp. v. Union of Soviet Socialist Republics*, 461 F. Supp. 609, 611 (S.D.N.Y. 1978) are inapposite for several reasons. First, the cases concerned themselves with a sovereign's immunity from liability; *not* the separate issue of the immunity of that sovereign's assets from execution. The concepts travel under entirely different provisions of the FSIA. Furthermore, the "commercial activity" being analyzed in each case was not a defense

contract (or trusts established for payment of the same). Notably, neither case makes mention of the military property immunity in § 1611(b)(2). The court in *NML Capital*, 680 F.3d 254 likewise did not pass on a § 1611 issue. Without a case dealing with the specific exemption at issue, Crystallex's arguments fall flat.

**IV.    Crystallex impermissibly sought the Writ for the sole purpose of circumventing an Injunction issued by a federal court that has already exercised jurisdiction over the matter**

Crystallex's attempt to execute on the Trust through this Court is a blatant attempt to usurp the jurisdiction of a sister federal court. Crystallex acknowledges that the Trust is subject to a temporary injunction (essentially a freeze order) by the Mississippi Court, which Ingalls is currently attempting to finalize into a permanent injunction. In simplest terms, Crystallex is asking this Court to ignore the findings of a sister court and direct BNYM to execute on funds in violation of the Injunction. This is plainly impermissible under the barest notions of full faith and credit.

The Constitution requires that judicial proceedings in any State be given full faith and credit in the courts of every other State. U.S. Const. art. IV, § 1. This "full faith and credit" explicitly extends to federal courts under 28 U.S.C. § 1738, and indeed "the judgments of the courts of the United States have invariably been recognized as upon the same footing, so far as concerns the obligation created by them, with domestic judgments of the states, wherever rendered and wherever sought to be enforced." *Embry v. Palmer*, 107 U.S. 3, 10, 2 S. Ct. 25, 31, 27 L. Ed. 346 (1883). "[C]ourts in the United States, both state and federal, must recognize and give effect to valid judgments rendered by other courts in the United States, including state and federal courts." *Employers Reinsurance Corp. v. Mid-Continent Cas. Co.*, 358 F.3d 757, 765 (10th Cir. 2004).

The Mississippi Court exercised jurisdiction over the Ministry, BNYM, and the Trust some fifteen years ago. On November 6, 2002, the Mississippi Court issued a temporary injunction freezing the assets in the Trust, and in the process made a number of findings that reaffirmed the existence of the Trust and that the Injunction would be in force to protect the rights related to the Contract, nothing more. While the Ministry disagrees with the need for the Injunction, it respects the Mississippi Court's findings, which is far more than can be said of Crystallex.

In spite of the Injunction, Crystallex asks this Court to set aside the reasoning of the Mississippi Court and empty the Trust, which would "frustrate the ends of justice and cause [Ingalls] irreparable harm," as expressly found in the Injunction. *Id.* at p. 3. What Crystallex proposes goes against every notion of co-equality among federal district courts, and violates both statute and precedent that assures full faith and credit among United States courts. There is simply no basis for this course of action. If Crystallex takes issue with the Injunction, it can intervene and challenge it in the Mississippi Proceedings. That it has not done so is telling. Accordingly, the Court should refuse to entertain Crystallex's attempted end-around the Mississippi Court and quash the Writ.

**V.    Given that the subject assets were frozen, and considering the extremely public nature of the Ingalls litigation, it was improper and unnecessary for Crystallex to seek a writ through *ex parte* proceedings under seal**

Under the circumstances of this case, it is improper for Crystallex to have proceeded *ex parte* to obtain the Writ. Crystallex claims that it was justified in procuring the Writ through *ex parte* proceedings and filings under seal because "[i]f Venezuela learned about Crystallex's intent to execute against the assets currently in BNYM's possession in the United States, it is extremely likely that Venezuela would take immediate steps to encumber or assign its interest therein." ECF No. 13, p. 13.  This argument is without merit.

As noted above, the Trust and its proceeds are subject to the Injunction in the Mississippi Proceedings. This injunction prevents any movement of the Trust assets except to pay Ingalls, which effectively freezes the money in the hands of BNYM as the trustee. The Republic has, at all times, respected both the spirit and the letter of the Trust, and the Mississippi Court has issued no finding to the contrary. Furthermore, nothing at all in the Trust Agreement permits the Ministry to transfer any interest in the Trust property, and nothing empowers the Trustee to accept such an appointment. Indeed, for the reasons stated in Section II, there is no interest to encumber or assign.

Furthermore, Crystallex does not need the guise of *ex parte* proceedings in order to avoid surprise. The Ingalls litigation has become a closely watched case in the legal world, with no shortage of publicity.[2] In addition, Crystallex has up-to-the-minute access to any paper filed in relation to the Trust Agreement. Crystallex has retained the law firm of Hughes Hubbard & Reed, LLP ("Hughes Hubbard") to represent it in the D.C. Court and the appeal filed by the Republic.[3] Hughes Hubbard also represents Huntington Ingalls in the arbitration proceedings brought by Huntington Ingalls against the Ministry of Defense. The Trust Agreement and the rights to the money from it are a contested issue in the arbitration, and Crystallex therefore has access through its attorneys to everything filed in the arbitration that could affect the Trust Agreement. To the extent it needs a second layer of notice,[4] Crystallex has public access to any

---

[2] *See, e.g.* Sebastian Perry, "Rio Panel Hears Frigates Claim," Global Arbitration Review, Oct. 1, 2014. A true and correct copy is attached as Exhibit C.

[3] Indeed, at the time of filing the *ex parte* motion, the Hughes Hubbard partner on the brief in the D.C. Court and subsequent appeal on behalf of Crystallex was Alex Yanos, the same person who is also lead counsel in the arbitration for Ingalls. According to press reports, Mr. Yanos has moved to Alston & Bird. There is no indication that the move would have any impact on the concurrent representation of Crystallex and Ingalls.

[4] Due to the fact that Ingalls and Crystallex have publicly taken divergent positions regarding the same money, one can only assume that the proper conflict of interest waivers are in place to

paper filed in the Mississippi Proceedings. And if this dual notice was insufficient, Crystallex could attempt to intervene in the Mississippi Proceedings to safeguard its nonexistent interest in the Trust, subject to Crystallex meeting the proper grounds for intervention.

In other words, Crystallex attempts to utilize *ex parte* proceedings based on a vague (and fictitious) fear of events that simply cannot happen. This does not constitute a "good and sufficient" reason to proceed *ex parte* in this case under Local Rule 6.1(d). Accordingly, Applicant should be denied any further access to *ex parte* relief.

## VI.   The form of the writ is defective because it fails to satisfy the FSIA and seeks assets that are not subject to Crystallex's judgment against the Republic

The Writ contains a number of errors that further impact its existence. First, the Writ does not reflect the judgment that Crystallex received. The judgment ordered in the D.C. Court lists the defendant as the "Bolivarian Republic of Venezuela." It does not list any ministry or any other agency or instrumentality. Instead, the Writ adds key language, adding after "Bolivarian Republic of Venezuela" the following: "(and its organs or subdivisions, including but not limited to, the Venezuelan Ministries of Defense and Finance), including, but not limited to, its interest in funds on deposit at the Bank of New York Mellon[.]" Crystallex did not sue the Ministry of Defense or the Ministry of Finance, and it did not obtain a judgment against either. For Crystallex to add this notation after obtaining a judgment in the DC Court but only in front of this Court indicates that Crystallex knows its judgment does not extend to the Ministry of Defense or the Ministry of Finance—it is merely trying to add the language in an unobtrusive, but wrong, way.

---

ensure that Hughes Hubbard (with or without Alston & Bird, as the case may be) can be counsel to both Ingalls and Crystallex and simultaneously share information about the arbitration to both of its clients.

The Writ is also impermissibly broad because it lacks the specificity that the FSIA requires, and because it was not issued pursuant to the appropriate provisions of the statute. While Crystallex has a judgment against the Republic, it has nothing at all against the Ministry (or, for that matter, against the Ministry of Finance). Nonetheless, it is attempting to execute on property that belongs to the Ministry, even though the Ministry has not been accorded any notice. This is simply not permitted under the FSIA.

Put simply, Crystallex is attempting to satisfy a judgment against the Republic by executing on an interest in the Trust that belongs to the Ministry of Defense. As discussed at length in Section III.A.2 above, this is simply impermissible because the Republic and the Ministry (and their assets) are entitled to a presumption of separateness. *See generally*, *EM Ltd.*, 800 F.3d at 90; *De Letelier*, 748 F.2d at 794. Furthermore, the FSIA does not permit such practice without a very specific process which was not followed here. At the outset, "the U.S. Supreme Court has quoted the legislative history of FSIA as stating that '[s]ection 1610(b) will not permit execution against the property of one agency or instrumentality to satisfy judgment against another, unrelated agency or instrumentality.'" *Bayer & Willis Inc. v. Republic of Gambia*, 283 F. Supp. 2d 1, 7 (D.D.C. 2003) (quoting *First Nat. City Bank*, 462 U.S. at 627, 103 S. Ct. at 2600).

In addition to Crystallex's failure to show any grounds to rebut the presumption of separateness, Crystallex has not satisfied the procedural requirements of the FSIA. Under such circumstances, it is not sufficient that Crystallex obtained a § 1610(c) determination as to the Republic. The FSIA requires that a § 1610(c) decision must be issued as to each specific asset sought for execution. *See Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, No. CIV.A. H-01-0634, 2002 WL 32107928, at *1 (S.D. Tex. Mar. 7, 2002)

("[Plaintiff] must identify with specificity the assets it seeks to execute upon so that the Court may determine whether an asset is immune from attachment under the FSIA.") (citing *Olympic Chartering S.A. v. Ministry of Industry & Trade of Jordan,* 134 F. Supp. 2d 528, 536 (S.D.N.Y. 2001)). The Seventh Circuit has held the same, reasoning that:

> A court cannot give a party a blank check when a foreign sovereign is involved; property belonging to the sovereign itself, or a different instrumentality, may still enjoy immunity while property of the instrumentality that is in the case may not. The only way the court can decide whether it is proper to issue the writ is if it knows which property is targeted.

*Autotech Tech. LP v. Integral Research & Dev. Corp.*, 49 F.3d 737, 750 (7th Cir. 2007).

None of the appropriate FSIA findings have been made with respect to the Trust, or with respect to any of the other property or parties listed in the Writ. Specifically, the Writ seeks execution upon "the goods and chattels of [the Republic] (and its organs and subdivisions, including but not limited to the Venezuelan Ministries of Defense and Finance), including, but not limited to, its interest in funds on deposit at the Bank of New York Mellon…" By its own language, the Writ could be used to reach any property of any governmental entity of Venezuela within the jurisdiction of this Court. The FSIA and the applicable case law does not permit execution under this wide of a net. Neither the DC Court nor this Court have issued any decisions pursuant to § 1610(c) that state that the Trust is subject to execution, or that the Ministry's assets should be imputed to the Republic or *vice versa*. Accordingly, the Writ is due to be quashed.

<u>CONCLUSION</u>

The Writ is procedurally defective and seeks to execute on property that is immune to execution under the FISA. For these reasons, and those stated above, the Writ is due to be

quashed. The Republic respectfully requests that the Court enter an order quashing the Writ and

granting any other such relief it deems fair and appropriate under the circumstances.


Respectfully Submitted,

*/s/ Mauricio Gomm*

**GST LLP**
Mauricio Gomm
N.Y. Bar No. 5080445
e-mail: mauricio.gomm@gstllp.com
Rodney Quinn Smith, II
FL Bar No. 59523
*Pro Hac Vice Application Pending*
175 S.W. 7th Street
Suite 2110
Miami, Florida 33130
(T) (305) 856-7723
(F) (786) 220-8265

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2017, I electronically filed the foregoing document
with the Clerk of Court using the CM/ECF filing system, which shall serve copies of this filing
on every party to this action. I further certify that I am unaware of any non-CM/ECF parties.

By: */s/ Mauricio Gomm*